# EXHIBIT 1

This page is part of your document - DO NOT DISCARD

**06 2435555**

RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA
**11/02/06 AT 08:00am**

TITLE(S) :



L E A D   S H E E T

FEE

FEE $ 67 AA
DAF $ 2
C-20   21

D.T.T.

NOTIFICATION SENT ©4©

CODE
20

CODE
19

CODE
9___

Assessor's Identification Number (AIN)
To be completed by Examiner OR Title Company in black ink.          Number of AIN's Shown

THIS FORM IS NOT TO BE DUPLICATED

LOS ANGELES,CA    Document: TD 2006.2435555                                                  Page 1 of 22
Printed on 10/3/2011 1:58:05 PM   Provided by Data Trace System

*5069525.6*
*Commonwealth*

Recording Requested By:
PEOPLE'S CHOICE HOME LOAN,
INC.
Return To:
PEOPLE'S CHOICE HOME LOAN,
INC.
7515 IRVINE CENTER DR.
IRVINE, CA 92618

**06 2435555**

*2*

Prepared By:
People's Choice Home Loan,
Inc. 7515 Irvine Center
Drive, Irvine, CA 92618

*8073-011-005*

———————[Space Above This Line For Recording Data]———————

# DEED OF TRUST

MIN 100273900103956834

**DEFINITIONS**

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated October 24, 2006
together with all Riders to this document.
(B) "Borrower" is SILVIO ANTONIO PERALTA, A MARRIED MAN  AS HIS SOLE AND
SEPARATE PROPERTY

Borrower's address is 14413 BRINK AVE, NORWALK                          , CA 90650
                                                    . Borrower is the trustor under this Security Instrument.
(C) "Lender" is PEOPLE'S CHOICE HOME LOAN, INC., a WYOMING CORPORATION

Lender is a CORPORATION
organized and existing under the laws of WYOMING

10395683

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3005  1/01

-6A(CA) (0207)
Page 1 of 15          Initials: *SAP*

VMP MORTGAGE FORMS - (800)521-7291

*11/20/11*
*90*

3

Lender's address is 7515 IRVINE CENTER DR., IRVINE, CA  92618

(D) "Trustee" is F.C.I., A California Corporation. 8101 Kaiser Blvd., Suite
#360 Anaheim Hills, CA 92808
(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary
under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an
address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F) "Note" means the promissory note signed by Borrower and dated October 24, 2006
The Note states that Borrower owes Lender FOUR HUNDRED FORTY-TWO THOUSAND AND 00/100
                                                                                                    Dollars
(U.S. $442,000.00           ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than November 1, 2036
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

[X] Adjustable Rate Rider [ ] Condominium Rider            [ ] Second Home Rider
[X] Balloon Rider         [ ] Planned Unit Development Rider [ ] 1-4 Family Rider
[ ] VA Rider              [ ] Biweekly Payment Rider         [ ] Other(s) [specify]

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(M) "Escrow Items" means those items that are described in Section 3.
(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

10395683

-6A(CA) (0207)                Page 2 of 15        _SAP_              Form 3005  1/01

06 2435555

11/02/06

4

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
COUNTY                    of                    LOS ANGELES                    :
[Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT
'A'
(A.P.N. #: 8073-011-015)

Parcel ID Number: 8073-011-015                              which currently has the address of
14413 BRINK AVENUE                                                          [Street]
NORWALK                                        [City], California 90650            [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

10395683

-6A(CA) (0207)                    Page 3 of 15                    Initials: *SAP*                    Form 3005   1/01

06 2435555

EXHIBIT "A"
(LEGAL DESCRIPTION)

LOT 15 IN BLOCK "J", TRACT 5260, IN THE CITY OF NORWALK, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 63 PAGE 9, OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

5

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

10395683

-6A(CA) (0207)     Page 4 of 15     Initials: $SAP$     Form 3006   1/01

06 2435555

11/02/06

6

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

10395683

-6A(CA) (0207)                    Page 8 of 15         Initials: SAP         Form 3005   1/01

06 2435555

06/02/11

7

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

10395683

-6A(CA) (0207)     Page 6 of 15     Initials: SAP     Form 3005  1/01

06 2435555

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

10396683

-6A(CA) (0207)    Page 7 of 15    Initials SAP    Form 3006  1/01

06 2435555

11/20/06

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

10395683

-6A(CA) (0207)                    Page 8 of 15          Initials: *SAP*          Form 3005  1/01

06 2435555

10

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

10395683

-6A(CA) (0207)          Page 9 of 15          Initials: SAP          Form 3005   1/01

06 2435555

11/02/06

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

10395683

-6A(CA) (0207)                                Page 10 of 19          Initials: *SAP*          Form 3005   1/01

**06 2435555**

12

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

10395683

-6A(CA) (0207)     Page 11 of 15     Initials: *SAP*     Form 3005  1/01

**06 2435555**

13

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

10395683

-6A(CA) (0207)                    Page 12 of 18            Initials: *SAP*            Form 3005   1/01

06 2435555

11/02/06

14

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.
10395683

-6A(CA) (0207)    Page 13 of 15    Initials: _SAD_    Form 3005   1/01

06 2435555

11/02/06

15

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                   SILVIO ANTONIO PERALTA        -Borrower

_____          _____ (Seal)
                                                                -Borrower

_____ (Seal)   _____ (Seal)
                -Borrower                                       -Borrower

_____ (Seal)   _____ (Seal)
                -Borrower                                       -Borrower

_____ (Seal)   _____ (Seal)
                -Borrower                                       -Borrower

10395683

-6A(CA) (0207)                 Page 14 of 15              Form 3005   1/01

06 2435555

16

State of California
County of _Los Angeles_ } ss.

On _October 25, 2006_ before me, _Judith Ferrer, Notary Public_
~~personally appeared~~
SILVIO ANTONIO PERALTA

, ~~personally known to me~~

(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

JUDITH FERRER
COMM. # 1441247
NOTARY PUBLIC-CALIFORNIA
LOS ANGELES COUNTY
COMM. EXP. SEPT. 21, 2007

_____ (Seal)

11/20/06

10395683
-6A(CA) (0207)          Page 18 of 18          SAP          Form 3005  1/01

06 2435555

File No: 05069525

17

# EXHIBIT "A"

All that certain real property situated in the County of Los Angeles, State of California, described as follows:

Lot 15 in Block "J" of Tract No. 5260, in the City of Norwalk, County of Los Angeles, State of California, as per map recorded in Book 63 Page 9 of Maps, in the office of the County recorder of said County.

11/02/06

**06 2435555**

Page 3

18

Loan Number 10395683

**ADJUSTABLE RATE RIDER**
**(LIBOR Six-Month Index (As Published In The Wall Street Journal)-Rate Caps)**
**50-Year Initial Amortization Rate (Due in 30 Years)**

THIS ADJUSTABLE RATE RIDER is made this 24th day of October, 2006 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to  PEOPLE'S CHOICE HOME LOAN, INC. ("Lender") of the same date and covering the property described in the Security Instrument and located at:

14413 BRINK AVENUE, NORWALK, CALIFORNIA 90650

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**

The interest rate I will pay may change on the 1st day of November, 2008 and on that day every 6 month(s) thereafter. Each date on which my interest rate could change is called a "Change Date".

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index.
The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR") as published in The Wall Street Journal. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index".
If the index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

ADRD50-1 (08/06)                           Page 1 of 3                     06 2435555  *Initials:* SAP

11/02/06

19

**(C)   Calculation of Changes**
For each Change Date, the Note Holder will calculate my new interest rate by adding seven percentage points (7.000%) to the Current Index. The Note Holder will then round the resulting sum to the nearest one eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

**(D)   Limits on Interest Rate Changes**
The interest rate I am required to pay at the first Change Date will not be greater than 11.000% or less than 8.000%. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than one percentage points (1.000%) from the rate of interest I have been paying for the preceding 6 months.

My interest rate will never be greater than 14.000% or less than 8.000% .

**(E)   Effective Date of Changes**
My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F)   Notice of Changes**
The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any questions I may have regarding the notice.

**TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**
Uniform Covenant 18 of the Security Interest is amended to read as follows:

Transfer of the Property or a Beneficial Interest Borrower.  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (of if Borrower is not a natural person and beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all such secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable free as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign as assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and Security Instrument unless Lender releases Borrower in writing.
If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

11/02/06

ADRD40-2 (06/06)    Page 2 of 3    **06 2435555** Initials: SAP

2D

**BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only before it is due is known as a "Prepayment". When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments then due under this Note.

The Note Holder will use my Prepayment to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to any accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase.

If within Twenty-four (24) months from the date of execution of the Security Instrument, I make full Prepayment or partial Prepayment, and the total of such Prepayment(s) in any 12-month period exceeds twenty percent (20%) of the original Principal amount of the loan, I will pay a Prepayment charge in an amount equal to 6 months' advance interest on the amount by which the total of my Prepayment(s) within that 12-month period exceeds twenty percent (20%) of the original Principal amount of the loan.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)          _____ (Seal)
SILVIO ANTONIO PERALTA        -Borrower                                              -Borrower

_____ (Seal)          _____ (Seal)
                                       -Borrower                                              -Borrower

_____ (Seal)          _____ (Seal)
                                       -Borrower                                              -Borrower

11/02/06

ADRD50-3 (08/06)                   Page 3 of 3        06 2435555   Initials: _____

PEOPLE'S CHOICE HOME LOAN, INC.

7515 IRVINE CENTER DR., IRVINE, CA 92618

21

——————————— [Space Above This Line For Recording Data] ———————————

LOAN #: 10395683

**Balloon Rider**
Rider to Security Instrument

THIS BALLOON RIDER is made this 24th day of October, 2006 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note (the "Note") to PEOPLE'S CHOICE HOME LOAN, INC., a WYOMING CORPORATION  (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

14413 BRINK AVENUE, NORWALK, CALIFORNIA 90650

[Property Address]

The interest rate stated on the Note is called the "Note Rate." The date of the Note is called the "Note Date. " I understand the Lender may transfer the Note, Security Instrument and this Rider. The Lender or anyone who takes the Note, the Security Instrument and this Rider by transfer and who is entitled to receive payments under the Note is called the "Note Holder."

ADDITIONAL COVENANTS. In addition to the covenants and agreements in the Security Instrument, Borrower and Lender further covenant and agree as follows (despite anything to the contrary contained in the Security Instrument or the Note):

THIS LOAN IS PAYABLE IN FULL AT MATURITY. BORROWER MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE.  THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME.  BORROWER WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT THE BORROWER MAY OWN, OR BORROWER WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER THE BORROWER HAS THIS LOAN WITH, WILLING TO LEND BORROWER THE MONEY.  IF THE BORROWER REFINANCES THIS LOAN AT MATURITY, THE BORROWER MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF THE BORROWER OBTAINS REFINANCING FROM THE SAME LENDER.

brider1                         Page 1 of 2                    06  2435555          06/06

22

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Balloon Rider.

_____          10-25-06
SILVIO ANTONIO PERALTA          -Borrower          Date

_____          _____
                                -Borrower          Date

_____          _____
                                -Borrower          Date

_____          _____
                                -Borrower          Date

_____          _____
                                -Borrower          Date

_____          _____
                                -Borrower          Date

brider2          Page 2 of 2          06 2435555          06/06

# EXHIBIT 2

**This page is part of your document - DO NOT DISCARD**



# 20090305560

Pages:
0003

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**03/04/09 AT 08:00AM**

| | |
|---|---|
| FEES: | 14.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 14.00 |



**LEADSHEET**

200903040180010

00000131364

001901768

**SEQ:
10**

**DAR - Title Company (Hard Copy)**



**THIS FORM IS NOT TO BE DUPLICATED**

2

INSTRUMENT PREPARED BY AND
WHEN RECORDED MAIL TO:
Wilshire Credit Corporation
P.O. Box 8517
Portland, OR 97207

03/04/2009

*2009030560*

Loan: 4195268
Min #: 100273900103956834
APN / Tax ID:

This area for recording office use

090107132    **Corporate Assignment of Mortgage/Deed of Trust**

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to

LaSalle Bank, N.A. as Trustee for the MLMI Trust Series 2007-HE1

with an address of 135 South LaSalle Street, Chicago, IL 60603

All beneficial interest under that certain Mortgage/Deed of Trust dated 10/24/2006 and executed by SILVIO
ANTONIO PERALTA, the lender being PEOPLES CHOICE HOME LOAN INC, in the original amount of
$442,000.00 and the Trustee being FCI

Recorded on 11/02/2006 in book___ at page____ as instrument No. 06-2435555 of Official Records in the County
Recorder's office of LOS ANGELES, State of California.

Property Address: 14413 BRINK AVE, NORWALK, CA 906504910

Together with the note or notes therein described or referred to, the money due and to becomedue thereon with
interest, and all rights accrued or to accrue under this Mortgage/Deed of Trust.

effective date : 2/11/2009

"MERS" is Mortgage Electronic Registration Systems,
Inc. as Nominee for PEOPLES CHOICE HOME LOAN INC.

Name: Melissa Tomlin
Title: Assistant Secretary

10

3

**Loan: 4195268**
Min #: 100273900103956834

**STATE OF OR**
**COUNTY OF Washington**

On 2/24/2009 before me, Justin M. Burns, Notary Public. Personally appeared Melissa Tomlin, who is the Assistant Secretary of "MERS" is Mortgage Electronic Registration Systems, Inc. as Nominee for PEOPLES CHOICE HOME LOAN INC. , Personally known to me or proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. WITNESS my hand and official seal.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Justin M. Burns, Notary Public

> OFFICIAL SEAL
> JUSTIN M. BURNS
> NOTARY PUBLIC - OREGON
> COMMISSION NO 432873
> MY COMMISSION EXPIRES SEPT. 17, 2012

# EXHIBIT 3

# STATE OF WYOMING * SECRETARY OF STATE
## MAX MAXFIELD
## BUSINESS DIVISION

200 West 24th Street, Cheyenne, WY 82002-0200
Phone 307-777-7311 · Fax 307-777-5339
Website: http://soswy.state.wy.us · Email: business@wyo.gov

## Filing Information

 **Please note that this form CANNOT be submitted in place of your Annual Report.**

| Name | **People's Choice Home Loan, Inc.** |
|---|---|
| Filing Type | Profit Corporation |
| Status | Inactive - Dissolved |

### General Information

| | | | |
|---|---|---|---|
| Fictitious Name | | ID | 1999-000352884 |
| Old Name | | Standing - Tax | Good |
| Sub Status | Archived | Standing - RA | Delinquent |
| Sub Type | | Standing - Other | Good |
| Formation Locale | Wyoming | Name Consent | N |
| Filing Date | 12/29/1999 12:00 AM | Term of Duration | Perpetual |
| Delayed Effective Date | | Expiration Date | |
| Inactive Date | 10/24/2008 | | |

### Share Information

| Common Shares | 100 | Preferred Shares | | Additional Stock | N |
|---|---|---|---|---|---|
| Par Value | 0.0000 | Par Value | 0.0000 | | |

### Registered Agent Address

No Agent
No Office
Cheyenne, WY 82001

### Mailing Address

2120 Carey Ave
Cheyenne, WY 82001

### Parties

| Type | Name / Organization / Address |
|---|---|

# Filing Information

 **Please note that this form CANNOT be submitted in place of your Annual Report.**

| | |
|---|---|
| Name | **People's Choice Home Loan, Inc.** |
| Filing Type | Profit Corporation |
| Status | Inactive - Dissolved |

## Most Recent Annual Report Information

| Type | Original | | | AR Year | 2007 |
|---|---|---|---|---|---|
| License Tax | $0.00 | AR Exempt | N | AR ID | 00932188 |
| AR Date | 10/24/2008 2:27 PM | | | | |
| Web Filed | N | | | | |

### Officers / Directors

| Type | Name / Organization / Address |
|---|---|
| Director | Matthew Kvarda |
| President | Matthew Kvarda |
| Secretary | Matthew Kvarda |
| Treasurer | Matthew Kvarda |
| Vice President | Matthew Kvarda |

### Principal Address

2120 Carey Ave
Cheyenne, WY 82001

### Mailing Address

2120 Carey Ave
Cheyenne, WY 82001

# Filing Information

 **Please note that this form CANNOT be submitted in place of your Annual Report.**

| Name | **People's Choice Home Loan, Inc.** |
|---|---|
| Filing Type | Profit Corporation |
| Status | Inactive - Dissolved |

## Amendment History

| Num | Type | Date | Delayed Date | Status |
|---|---|---|---|---|
| 2009-000754554 | RA Resignation | 05/07/2009 | | Active |
| 2008-000701918 | Articles of Dissolution | 10/24/2008 | | Active |
| 2008-000701913 | Reinstatement - Admin. Diss. Tax | 10/24/2008 | | Active |
| 2008-000681358 | System Amendment | 06/04/2008 | | Active |
| 2007-000646810 | System Amendment | 12/02/2007 | | Active |
| | Common Amendment | 01/10/2005 | | Active |
| | RA Address Change | 01/07/2005 | | Active |
| | Merger - Survivor | 12/28/2004 | | Active |
| | Common Amendment | 12/31/2001 | | Active |
| See Filing ID | Initial Filing | 12/29/1999 | | Active |

# EXHIBIT 4

**This page is part of your document - DO NOT DISCARD**



# 20090345529

**Pages: 0003**

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**03/11/09 AT 08:00AM**

| | |
|---|---|
| **FEES:** | 14.00 |
| **TAXES:** | 0.00 |
| **OTHER:** | 0.00 |
| **PAID:** | 14.00 |



**LEADSHEET**



200903110170009

00000171374



002004718

**SEQ:
05**

**DAR - Title Company (Hard Copy)**

**THIS FORM IS NOT TO BE DUPLICATED**

Recording requested by:
Quality Loan Service Corp

When recorded mail to:
Quality Loan Service Corp.
2141 5th Avenue
San Diego, CA 92101

TS No.: CA-09-247658-ED          Loan No.: 4195268          *Space above this line for Recorder's use*

## IMPORTANT NOTICE
## NOTICE OF DEFAULT AND ELECTION TO SELL
## UNDER DEED OF TRUST

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION.** You may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account (normally five business days prior to the date set for the sale of your property). No sale may be set until three months from the date this notice of default is recorded (which date of recordation appears on this notice). This amount is $20,133.16 as of 3/10/2009 and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have the pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the three-month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

Wilshire Credit Corporation
C/O Quality Loan Service Corp.
2141 5th Avenue
San Diego, CA 92101
619-645-7711

3

TS No.: CA-09-247658-ED
Loan No.: 4195268
Notice of Default and Election To Sell Under Deed of Trust

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

## Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN: That the undersigned is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated 10/24/2006, executed by SILVIO ANTONIO PERALTA, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY, as Trustor, to secure certain obligations in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR PEOPLE'S CHOICE HOME LOAN, INC., A WYOMING CORPORATION, as beneficiary, recorded 11/2/2006, as Instrument No. 06 2435555, in Book xxx, Page xxx of Official Records in the Office of the Recorder of LOS ANGELES County, California describing land therein: as more fully described in said Deed of Trust.

Said obligations including 1 NOTE(S) FOR THE ORIGINAL sum of $442,000.00, that the beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by the undersigned; that a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

Installment of principal and interest plus impounds and advances which became due on 11/1/2008 plus amounts that are due or may become due for the following: late charges, delinquent property taxes, insurance premiums, advances made on senior liens, taxes and/or insurance, trustees fees, and any attorney fees and court costs arising from or associated with beneficiaries effort to protect and preserve its security must be cured as a condition of reinstatement.

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

The Beneficiary or its designated agent declares that it has contacted the borrower, tried with due diligence to contact the borrower as required by California Civil Code § 2923.5, or the borrower has surrendered the property to the beneficiary or authorized agent, or is otherwise exempt from the requirements of § 2923.5.

Dated: 3/10/2009

Quality Loan Service Corp., AS AGENT FOR BENEFICIARY
BY: LSI Title Company

Anselmo Pagkaliwangan

If you have previously been discharged through bankruptcy, you may have been released of personal liability for this loan in which case this letter is intended to exercise the note holder's rights against the real property only.

## THIS OFFICE IS ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit report agency if you fail to fulfill the terms of your credit obligations.

# EXHIBIT 5

# LaSalle Bank

From Wikipedia, the free encyclopedia

**LaSalle Bank** Corporation was the holding company for LaSalle Bank N.A. and LaSalle Bank Midwest N.A. (formerly Standard Federal Bank). With $116 billion in assets, it was headquartered at 135 South LaSalle Street in Chicago, Illinois. LaSalle Bank Corporation was formerly an indirect subsidiary of Netherlands-based ABN AMRO Bank N.V., one of the world's largest banks, with total assets of EUR 986 billion, more than 3,000 locations in over 60 countries and a staff of more than 105,000. Bank of America acquired LaSalle Bank Corp. effective October 1, 2007 and officially adopted the Bank of America name on May 5, 2008.

### LaSalle Bank N.A.



## LaSalle Bank

| | |
|---|---|
| **Industry** | Financial Services |
| **Fate** | Acquired by Bank of America |
| **Successor** | Bank of America N.A. |
| **Founded** | 1927 |
| **Defunct** | 2008 |
| **Headquarters** | Chicago, Illinois, USA |
| **Products** | Middle-Market Commercial Lending, Middle-Market Commercial Real Estate Lending, Domestic and International Cash Management Commercial Banking, Wealth Management, Retail Banking, |
| | Trust and Treasury |
| **Parent** | Bank of America (current) ABN AMRO (former) |

# Contents

- 1 Corporate Profile
    - 1.1 LaSalle Bank N.A.
    - 1.2 LaSalle Bank Midwest N.A.
    - 1.3 Sale to Bank of America
- 2 Sponsorships
- 3 References

# Corporate Profile

## LaSalle Bank N.A.

Founded in 1927 as National Builders Bank of Chicago, it changed its name to LaSalle National Bank in 1940. In the 1960s LaSalle acquired the Mutual National Bank of Chicago founded by Frank C. Rathje. ABN acquired the bank in 1979. In a merger of co-owned banks, the LaSalle Bank N.A. name was adopted in 1999. It was the largest bank headquartered in Chicago with $72.2 billion in assets and $46.8 billion in deposits. LaSalle Bank maintained 146 retail locations and 450 ATMs throughout Chicago and its neighboring suburbs.

LaSalle Bank maintained regional offices in Atlanta, Boca Raton, Boston, Cincinnati, Cleveland, Columbus, Connecticut, Dallas, Denver, Des Moines, Houston, Indianapolis, Kansas City, Los Angeles, Miami, Milwaukee, Minneapolis, Nashville, New Jersey, New York City, Omaha, Philadelphia, Pittsburgh, San Francisco, St. Louis, Tampa, Troy, Tustin, and Washington, D.C. Subsidiaries included LaSalle National Leasing Corporation, LaSalle Business Credit, LLC, and LaSalle Financial Services, Inc.

## LaSalle Bank Midwest N.A.

*Main article: Standard Federal Bank*

The midwestern bank was headquartered at 2600 W. Big Beaver Rd., Troy, Michigan, with $43 billion in assets and $24.1 billion in deposits. LaSalle was one of the largest banks in the Midwest, serving individuals, small businesses, middle-market companies and institutions through 264 branches and 1,000 ATMs in Michigan and Indiana. It was founded in 1893 and was known as Standard Federal Bank before it adopted the LaSalle name in 2005. In 2007, it became part of Bank of America.

## Sale to Bank of America

On April 23, 2007, an agreement was made to sell LaSalle Bank Corporation to Bank of America for $21 billion[1] Bank of America Corp officially took over LaSalle Bank Corp on October 1, 2007.[2] This was a defensive move by ABN-AMRO to stave off its own purchase by Royal Bank of Scotland, which wanted to merge LaSalle with its Citizens Financial Group division. The acquisition makes Bank of America the largest bank by deposits in both Chicago and Detroit; Bank of America previously had a minimal presence in Chicago and none in Michigan.[3] The banks adopted the Bank of America name on Sunday, May 4, 2008.[4]

# Sponsorships

LaSalle sponsored a number of events in its Chicago home. Many of these events will now be re-branded with Bank of America's name.

- LaSalle Bank Open a Nationwide Tour golf tournament
- The Chicago Marathon
- The Chicago White Sox
- The International Music Foundation (http://www.imfchicago.org) Dame Myra Hess Memorial Concert
- The Navy Pier Winter WonderFest
- The Shamrock Shuffle (http://www.shamrockshuffle.com) the largest 8 km race in the world
- Handel's "Do-it-yourself" Messiah (http://www.imfchicago.org/diymain.html)

# References

1. ^ ABN AMRO announces USD 21 billion sale of LaSalle to Bank of America (http://www.abnamro.com/pressroom /releases/2007/2007-04-23-en-l.jsp) .
2. ^ Bank of America | Newsroom - Press Releases (http://bankofamerica.mediaroom.com /index.php?s=press_releases&item=7885)
3. ^ Bank of America to buy LaSalle Bank for $21B, enters Chicago area - U.S. business - MSNBC.com (http://www.msnbc.msn.com/id/18269962/)
4. ^ Bank of America name replaces LaSalle | lansingstatejournal.com | Lansing State Journal (http://www.lansingstatejournal.com/apps/pbcs.dll/article?AID=/20080502/NEWS03/805020382)

Retrieved from "http://en.wikipedia.org/w/index.php?title=LaSalle_Bank&oldid=452612066"

Categories:    Bank of America   Banks based in Illinois   Private banks   Bank of America legacy banks   ABN AMRO   Banks established in 1927   Defunct companies based in Chicago, Illinois   Defunct banks of the United States

- This page was last modified on 27 September 2011 at 00:37.
- Text is available under the Creative Commons Attribution-ShareAlike License; additional terms may apply. See Terms of use for details.

# EXHIBIT 6

**This page is part of your document - DO NOT DISCARD**



# 20090584688

Pages:
0004

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**04/22/09 AT 08:00AM**

| | |
|---|---|
| FEES: | 17.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 17.00 |



**LEADSHEET**



200904220150008

00000401072



002073108

**SEQ:
15**

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**          T35

brief

*2*

Recording requested by:

When recorded mail to:

Quality Loan Service Corp.
2141 5th Avenue
San Diego, CA 92101
619-645-7711



Space above this line for recorders use

TS # CA-09-247658-ED      Order # 090107132-CA-GTI      Loan # 4195268

## Substitution of Trustee

WHEREAS, SILVIO ANTONIO PERALTA, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY was the original Trustor, F.C.I., A CALIFORNIA CORPORATION was the original Trustee, and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR PEOPLE'S CHOICE HOME LOAN, INC., A WYOMING CORPORATION was the original Beneficiary under that certain Deed of Trust dated 10/24/2006 and recorded on 11/2/2006 as Instrument No. 06 2435555, in book xxx, page xxx of Official Records of LOS ANGELES County, CA; and

WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and

WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in place and stead of said original Trustee, or Successor Trustee, thereunder, in the manner provided for in said Deed of Trust,

NOW, THEREFORE, the undersigned hereby substitutes QUALITY LOAN SERVICE CORPORATION ,as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

Page 1

Substitution of Trustee - CA
TS # CA-09-247658-ED
Page 2

Dated: 3/10/2009

LaSalle Bank, N.A. as Trustee for the MLMI Trust Series
2007-HE1 by Wilshire Credit Corporation its Attorney in
Fact

By: _____

  .·. Hood          **Authorized Agent**

State of M·· }
County of Dakota }

On 3-18-09 Date before me, _____Shoua Moua_____ a notary public,  personally
appeared _____ . .Hood _____ who proved to me on the basis of
satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s),
or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the
foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

SHOUA MOUA
NOTARY PUBLIC - MINNESOTA
MY COMMISSION
EXPIRES JAN. 31, 2012

4

## Affidavit of Mailing
### for Substitution of Trustee By Code

TS No.: **CA-09-247658-ED**
Trustor: SILVIO ANTONIO PERALTA, A MARRIED MAN AS HIS SOLE AND SEPARATE
PROPERTY

I, Connie Zinn, declare: That I am an employee of **Quality Loan Service Corp.**, an agent for
beneficiary, whose business address is:

    2141 5th Avenue
    San Diego, CA 92101

I am over the age of eighteen years and in accordance with California Civil Code Section 2934,
I caused a copy of the attached Substitution of Trustee to be mailed, in the manner provided in
Section 2924(b) of the Civil Code of the State of California, to the trustee of record under the
Deed of Trust described in said Substitution and to all persons to whom a copy of the Notice of
Default would be required to be mailed by the provisions of said section.

I certify (or declare) under penalty of perjury under the laws of the State of California that the
foregoing is true and correct. Executed at San Diego, CA on 3/25/2009.


_Connie Zinn_
Connie Zinn

# EXHIBIT 7



**This page is part of your document - DO NOT DISCARD**



# 20101874638

Pages:
0003

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**12/17/10 AT 08:00AM**

| | |
|---|---|
| FEES: | 21.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 21.00 |



**LEADSHEET**



201012170190016

00003462219

003051454

**SEQ:**
**27**

**DAR - Title Company (Hard Copy)**

**THIS FORM IS NOT TO BE DUPLICATED**

---

Recording requested by:
Quality Loan Service Corp.

When recorded mail to:
Quality Loan Service Corp.
2141 5th Avenue
San Diego, CA 92101



TS #: CA-09-347658-ED                SPACE ABOVE THIS LINE FOR RECORDER'S USE
Order #: 090107132-CA-GTI

## NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 10/24/2006. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank, check drawn by state or federal credit union, or a check drawn by a state or federal savings and loan association, or savings association, or savings bank specified in Section 5102 to the Financial code and authorized to do business in this state, will be held by duly appointed trustee. The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust, with interest and late charges thereon, as provided in the note(s), advances, under the terms of the Deed of Trust, interest thereon, fees, charges and expenses of the Trustee for the total amount (at the time of the initial publication of the Notice of Sale) reasonably estimated to be set forth below. The amount may be greater on the day of sale.

**BENEFICIARY MAY ELECT TO BID LESS THAN THE TOTAL AMOUNT DUE.**

Trustor(s):      **SILVIO ANTONIO PERALTA, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY**

Recorded:      11/2/2006 as Instrument No. 06 2435555 in book xxx, page xxx of Official Records in the office of the Recorder of LOS ANGELES County, California;

Date of Sale:  1/10/2011 at 10:30 AM
Place of Sale:  At the West side of the Los Angeles County Courthouse, directly facing Norwalk Blvd., 12720 Norwalk Blvd., Norwalk, CA 90650
Amount of unpaid balance and other charges: $541,321.86
The purported property address is:     14413 BRINK AVE
                                       NORWALK, CA 90650

Assessor's Parcel No. 8073-011-015

The undersigned Trustee disclaims any liability for any incorrectness of the property address or other common designation, if any, shown herein. If no street address or other common designation is shown, please refer to the referenced legal description for property location. In the event no common address or common designation of the property is provided herein directions to the location of the property may be obtained within 10 days of the date of first publication of this Notice of Sale by sending a written request to Bank of America 475 Crosspoint Parkway Getzville NY 14068

3

Pursuant to California Civil Code §2923.54 the undersigned, on behalf of the beneficiary, loan servicer or authorized agent, declares as follows:

[ 1 ] The mortgage loan servicer has obtained from the commissioner a final or temporary order of exemption pursuant to Section 2923.53 that is current and valid on the date the notice of sale is filed;

[ 2 ] The timeframe for giving notice of sale specified in subdivision (a) of Section 2923.52 does not apply pursuant to Section 2923.52 .

If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee, and the successful bidder shall have no further recourse.

If the sale is set aside for any reason, the Purchaser at the sale shall be entitled only to a return of the deposit paid. The Purchaser shall have no further recourse against the Mortgagor, the Mortgagee, or the Mortgagee's Attorney.

Date: 12/16/10

Quality Loan Service Corp.
2141 5th Avenue
San Diego, CA 92101
619-645-7711 For NON SALE information only
Sale Line: 714-730-2727 or Login to: www.fidelityasap.com
Reinstatement Line: 619-645-7711

Christine Blanga

Quality Loan Service Corp. by Christine Blanga, as Authorized Agent.

If you have previously been discharged through bankruptcy, you may have been released of personal liability for this loan in which case this letter is intended to exercise the note holders right's against the real property only.

**THIS NOTICE IS SENT FOR THE PURPOSE OF COLLECTING A DEBT. THIS FIRM IS ATTEMPTING TO COLLECT A DEBT ON BEHALF OF THE HOLDER AND OWNER OF THE NOTE. ANY INFORMATION OBTAINED BY OR PROVIDED TO THIS FIRM OR THE CREDITOR WILL BE USED FOR THAT PURPOSE.**

As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit report agency if you fail to fulfill the terms of your credit obligations.

# EXHIBIT 8

This page is part of your document - DO NOT DISCARD



# 20111113759

Pages:
0003

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**08/18/11 AT 08:54AM**

| FEES: | 21.00 |
|-------|-------|
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 21.00 |



**LEADSHEET**

201108181000034

00004551069

003458183

**SEQ:
01**

Daily ERDS

**THIS FORM IS NOT TO BE DUPLICATED**        E13

Recording Requested By:
**Bank of America**
Prepared By: Aida Duenas
450 E. Boundary St.
Chapin, SC 29036
888-603-9011
When recorded mail to:
CoreLogic
450 E. Boundary St.
Attn: Release Dept.
Chapin, SC 29036

DocID# 51223118322190050

Property Address:
14413 Brink Ave
Norwalk, CA 90650-4910

CAD-ADT 14961329        2/11/2011

This space for Recorder's use

MIN #: 100273900103956834        MERS Phone #: 888-679-6377

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is 3300 S.W. 34th Avenue, Suite 101 Ocala, FL 34474 does hereby grant, sell, assign, transfer and convey unto U.S. BANK, NATIONAL ASSOCIATION, AS SUCCESSOR TRUSTEE TO BANK OF AMERICA N.A. AS SUCCESSOR BY MERGER TO LASALLE BANK, N.A., AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE MLMI TRUST, MORTGAGE LOAN ASSET-BACKED   CERTIFICATES, SERIES 2007-HE1 whose address is 135 S LASALLE ST1740, CHICAGO, IL 60603 all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

Original Lender:        **PEOPLE'S CHOICE HOME LOAN INC., A WYOMING CORPORATION**

Original Borrower(s):        **SILVIO ANTONIO PERALTA, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY**

Original Trustee:        **F.C.I., A CALIFORNIA CORPORATION**

Date of Deed of Trust:        **10/24/2006**

Original Loan Amount:        **$442,000.00**

Recorded in Los Angeles County, CA on: 11/2/2006, book N/A, page N/A and instrument number 06 2435555

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on
8/15/11

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

By: _____
Miguel Romero, Vice President

State of California
County of Ventura

On _8-15-11_ before me, _Victoria Cook_, Notary Public, personally appeared Miguel Romero, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public: _____
My Commission Expires: _____                    (Seal)

VICTORIA COOK
Commission # 1801310
Notary Public - California
Ventura County
My Comm. Expires Jun 28, 2012

attached: ADOT VC

Borrower(s): Silvio Antonio Peralta

# EXHIBIT 9

Case 2:12-cv-00909-JFW-AJW Document 1-1 Filed 02/01/12 Page 54 of 57 Page ID #:257

**LPS Agency Sales And Posting**

Banking Mortgage Information Technology

LPS ASAP - One Source, Powerful Solutions

HOME | COMPANY | SERVICES | CONTACT US | F.A.Q |

## Terms of Use

By using this service you agree to the terms described below

While LPS - Agency Sales and Posting has attempted to make the information on this server as accurate as possible, the information on this Web server is provided in good faith without any express or implied warranty.

There is no guarantee given as to the accuracy or correctness of any individual item on the server. Persons accessing the server who require confirmation of any information should refer directly with their representative at LPS - Agency Sales and Posting

LPS - Agency Sales and Posting does not accept responsibility for any loss or damage occasioned by use of the information contained on the server. All access and use is at the risk of the user. LPS - Agency Sales and Posting reserves the right to discontinue providing the information at any time without notice and to impose limitations on access. Individual users are responsible for any charges that their use may incur

Sa St Co Ci Zip TS AS AP 64 St EA Sa Se tod

Your search returned 1 record(s).

Summary View

Displaying 200 records per page

1

| Sale Date | Property Detail | | Sale Detail | |
|---|---|---|---|---|
| Monday 2/6/2012 11:00:00 AM | Address: | 14413 BRINK AVE | Sale Status: | Postponed to 02/06/2012 (Trustee's Discretion) |
| | City: | NORWALK | TS Number: | CA08247658ED |
| | State: | CA | ASAP Number: | #161804 |
| | Zip: | 90650 | Notice of Sale Amt: | $589,526.92 |
| | County: | Los Angeles | Opening Bid Amt: | 0 |
| | APN: | 8073-011-015 | Sold Amt: | 0 |
| | | | Sale Location: | By the fountain located at 400 Civic Center Plaza, Pomona, CA 91766 |
| | | | Trustee: | Quality Loan Service Corporation |
| | | | Trustee Phone#: | (619)645-7711 |

1

<!-- end page -->

Copyright © 2010 Lender Processing Services, Inc. All rights reserved.

Privacy Statement | Site Support
Webasaver3

This page is part of your document - DO NOT DISCARD



**20111745322**

Pages:
0003

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**12/23/11 AT 08:00AM**

| | |
|---|---|
| FEES: | 21.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 21.00 |



LEADSHEET



201112230190002

00006137274

003700909

SEQ:
26

DAR - Title Company (Hard Copy)

THIS FORM IS NOT TO BE DUPLICATED          t35

Z

Recording requested by
Quality Loan Service Corp

When recorded mail to
Quality Loan Service Corp.
2141 5th Avenue
San Diego, CA 92101



TS # CA-09-247658-ED
Order #: 090107132-CA-GTI                     SPACE ABOVE THIS LINE FOR RECORDER'S USE

## NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 10/24/2006. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank, check drawn by state or federal credit union, or a check drawn by a state or federal savings and loan association, or savings association, or savings bank specified in Section 5102 to the Financial code and authorized to do business in this state, will be held by duly appointed trustee. The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust, with interest and late charges thereon, as provided in the note(s), advances, under the terms of the Deed of Trust, interest thereon, fees, charges and expenses of the Trustee for the total amount (at the time of the initial publication of the Notice of Sale) reasonably estimated to be set forth below. The amount may be greater on the day of sale.

**BENEFICIARY MAY ELECT TO BID LESS THAN THE TOTAL AMOUNT DUE.**

Trustor(s):     SILVIO ANTONIO PERALTA, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY
Recorded:       11/2/2006 as Instrument No. 06 2435555 in book xxx, page xxx of Official Records in the office of the Recorder of LOS ANGELES County, California;

Date of         1/23/2012 at 11:00 AM
Sale:
Place of        By the fountain located at 400 Civic Center Plaza, Pomona, CA 91766
Sale:
Amount of unpaid balance and other charges: $589,526.92
The purported property address    14413 BRINK AVE
is:                               NORWALK, CA 90650
Assessor's Parcel No. 8073-011-015

The undersigned Trustee disclaims any liability for any incorrectness of the property address or other common designation, if any, shown herein. If no street address or other common designation is shown, directions to the location of the property may be obtained by sending a written request to the beneficiary within 10 days of the date of first publication of this Notice of Sale.

If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee, and the successful bidder shall have no further recourse.

25

Branch :10C,User :ADZ1                    Comment:                                              Station Id :WZBT

*3*

If the sale is set aside for any reason, the Purchaser at the sale shall be entitled only to a return of the deposit paid. The Purchaser shall have no further recourse against the Mortgagor, the Mortgagee, or the Mortgagee's Attorney.

Date:

12/21/11

Quality Loan Service Corp.
2141 5th Avenue
San Diego, CA 92101
619-645-7711 For NON SALE information only
Sale Line: 714-730-2727 or Login to: www.lpsasap.com
Reinstatement Line: 619-645-7711 Ext. 3704

Quality Loan Service Corp. by: Christine Bitanga, as Authorized Agent.

If you have previously been discharged through bankruptcy, you may have been released of personal liability for this loan in which case this letter is intended to exercise the note holders right's against the real property only.

**THIS NOTICE IS SENT FOR THE PURPOSE OF COLLECTING A DEBT. THIS FIRM IS ATTEMPTING TO COLLECT A DEBT ON BEHALF OF THE HOLDER AND OWNER OF THE NOTE. ANY INFORMATION OBTAINED BY OR PROVIDED TO THIS FIRM OR THE CREDITOR WILL BE USED FOR THAT PURPOSE.**

As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit report agency if you fail to fulfill the terms of your credit obligations.